UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Charter Oak Fire Insurance Co. and
Travelers Property Casualty Co. of America,

   Plaintiffs,

v.                  Civil No. 16-140 (JNE/HB)
                     ORDER
The Burlington Northern and Santa Fe
Railway Co., and Toltz, King, Duvall,
Anderson & Assocs., Inc.,

   Defendants.

---

  Plaintiffs Charter Oak Fire Insurance Co. ("Charter Oak") and Travelers Property Casualty Co. of America ("Travelers") (collectively "Plaintiffs") bring this suit seeking a judicial declaration regarding their obligations to defend and indemnify each of the defendants, The Burlington Northern and Santa Fe Railway Co. ("BNSF") and Toltz, King, Duvall, Anderson & Associates, Inc. ("TKDA") (collectively "Defendants"). Before the Court is BNSF's motion to transfer venue to the District of Montana pursuant to 28 U.S.C. § 1404(a). TDKA filed a brief in support of BNSF's motion but does not formally join in it. For the reasons stated below, the Court denies the motion.

**I. Background**

  Plaintiffs allege that TKDA, an engineering firm, performed work for BNSF that included the installation of and then modification of a spring-loaded catwalk at a fuel unloading facility in Whitefish, Montana, in 2002 to 2003. Am. Compl. ¶¶ 56-57, Dkt. No. 6; *id.* Ex. F, Dkt. No. 6-7. TKDA is a Minnesota corporation with its principal place of business in Minnesota. Am. Compl. ¶ 14. BNSF is a Delaware corporation with its principal place of business in Texas. *Id.* ¶ 13. BNSF and TKDA entered into an "Agreement for Engineering

Services" in 2001.  *Id.* ¶ 50.  That agreement[1] provided that TKDA would obtain insurance coverage for bodily injury, products, and completed operations, that TKDA would name BNSF as an additional insured on the policy with respect to work performed under their agreement, and that TKDA would indemnify BNSF for injury claims arising out of TKDA's work.  *Id.* ¶¶ 52-53.  In 2009, BNSF and TKDA entered into an "Engineering Service Agreement" that largely but not entirely superseded and cancelled all previous agreements between the two parties.  *Id.* ¶¶ 54-55.  TKDA purchased primary, commercial general liability insurance from Charter Oak and excess liability insurance from Travelers, both with policies effective from August 2010 to 2011.  *Id.* ¶¶ 18, 22.  The parties dispute whether BNSF is an "additional insured" under the Charter Oak and Travelers policies.  *See id.* ¶¶ 8, 20, 53, 67.

In 2013, a former BNSF employee, Terry Fox, sued BNSF alleging that he suffered injuries when, in 2011, a spring-loaded catwalk at BNSF's Whitefish, Montana, fuel unloading facility unexpectedly released.  *Id.* Ex. C, Dkt. No. 6-4.  Fox filed his suit (the "Fox Lawsuit") in Montana state court.  *Id.*  BNSF notified TKDA of the Fox Lawsuit in March 2015, and Charter Oak agreed to defend BNSF pursuant to a full and complete reservation of rights.  Am. Compl. ¶¶ 59-61.

On January 21, 2016, Charter Oak and Travelers filed this action in the District of Minnesota seeking a declaration of their obligations to defend and indemnify each of the Defendants in connection with the Fox Lawsuit.  *See* Dkt. No. 1.  On February 16, 2016, BNSF filed a complaint in the United States District Court for the District of Montana against TKDA that, at its core, alleges that TKDA owes it indemnity relating to the Fox Lawsuit.  Am. Compl. ¶¶ 38, 48; *id.* Ex. G, Dkt. No. 6-8.  On February 29, 2016, Plaintiffs filed an amended complaint

---

[1] The summaries of the allegations in this opinion are not to be construed as making any findings on the merits of the underlying dispute.

in this action adding allegations about their obligations to BNSF and TKDA regarding the BNSF Lawsuit.

Plaintiffs allege, among other things, that BNSF is not an "insured" under the Charter Oak policy and that the policies do not apply to injuries from TKDA's work on the catwalk like those alleged in the Fox Lawsuit because the terms of the policies state that coverage does not extend to TKDA's rendering of or failure to render any "professional services" as that term is defined in the policies. *E.g.*, Am. Compl. ¶¶ 67-68, 85-86. They also allege that they are not required to defend or indemnify TKDA with regard to the BNSF Lawsuit because, among other things, the policies do "not apply to 'bodily injury' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract" or to "bodily injury" that "aris[es] out of the rendering or failing to render any 'professional services'" as defined in the policies. *E.g.*, *id.* ¶¶ 101-02, 115-16.

## II.     Analysis

BNSF moves to transfer this action, filed by Plaintiffs in the District of Minnesota, to the District of Montana pursuant to 28 U.S.C. § 1404(a). That statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district" where "it might have been brought." Plaintiffs concede that they could have filed this action in the District of Montana. Plfs.' Br. 8 n.2, Dkt. No. 24.

Courts must consider "three general categories of factors" when deciding a motion to transfer: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). The Court's consideration is not limited, however, to "these enumerated factors;" rather, it will evaluate "the particular circumstances at hand," considering all relevant case-specific factors. *Id.*

As indicated by the statute's permissive "may transfer" phrasing, a court's § 1404(a) decision is discretionary. *See id.* (reviewing for abuse of discretion). Under Eighth Circuit precedent, moreover, a motion to transfer "should not be freely granted." *In re Nine Mile Ltd.*, 692 F.2d 56, 61 (8th Cir. 1982), *abrogated on other grounds as recognized in Mo. Hous. Devel. Comm'n v. Brice*, 919 F.2d 1306 (8th Cir. 1990). "[I]n general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (quoting *Terra*, 119 F.3d at 695). "A 'heavy' burden rests with the movant to demonstrate why a case should be transferred." *Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1137 (D. Minn. 2009) (citations omitted). To satisfy its burden, the movant "must show that the balance of factors 'strongly' favors" it. *E.g.*, *Toomey v. Dahl*, 63 F. Supp. 3d 982, 993 (D. Minn. 2014) (citation omitted); *see also Apple*, 602 F.3d at 915 (finding that certain factors in that case "weigh[ed] strongly in favor of transfer").

      **A.**    **Convenience of the Parties**

The Court first considers the convenience of the parties based on their places of residence. TKDA is the only party that is based in Minnesota. As noted above, BNSF is incorporated in Delaware with its principal place of business in Texas. Charter Oak and Travelers are both incorporated in, and each maintains its principal place of business in, Connecticut. Am. Compl. ¶¶ 11-12. Citing *Cosmetic Warriors Ltd. v. Abrahamson*, 723 F. Supp. 2d 1102, 1105 (D. Minn. 2010), BNSF argues that this factor is neutral because the only party for whom Minnesota would presumably be a convenient venue, TKDA, supports the motion to transfer to Montana. BNSF Br. 6. The Court agrees that a consideration of convenience based on the parties' places of residence does not tilt the scale in either direction.

Only TKDA is from this district, and by supporting BNSF's motion, TKDA indicates that it considers Montana to be more convenient or appropriate. The Court notes, though, that TKDA did not formally join in the motion to transfer. *See* TKDA Br., Dkt. 26. Moreover, this case is not one where "no relevant connection exists" between the parties and this forum, because Plaintiffs filed suit in the "home" district of their insured TKDA. *Compare with Apple*, 602 F.3d at 913. Finally, even if only one party is Minnesotan and that party supports transferring this action, *none* of the parties hail from Montana.

Next, BNSF argues that the District of Montana would be more convenient for the parties because the catwalk at issue in the Fox Lawsuit is in Montana; the Fox Lawsuit, in which Charter Oak provided a defense to BNSF, was litigated in Montana; and Charter Oak, TKDA, and BNSF all participated in settlement mediations in the Fox Lawsuit in Montana. BNSF Br. 6. Courts should consider where the events in the allegations occurred. *See, e.g.*, *Apple*, 602 F.3d at 914 (noting that none of the alleged misconduct occurred in the district out of which Apple moved to transfer). Here, some of the events in the background—TKDA's work on the catwalk and litigation activity relating to the Fox Lawsuit—occurred in the District of Montana, which weighs in favor of transfer. These events, however, are counterbalanced in part if not entirely by the fact that TKDA entered into its insurance policies with Plaintiffs in the District of Minnesota, and it is these policies that are directly at issue in this action—not the underlying liability issues in the Fox Lawsuit or even the uncontested fact that Charter Oak provided a defense and participated in the Fox Lawsuit in Montana pursuant to a reservation of rights. Arguably the key events in this action were the Plaintiffs' decisions to deny coverage, and those decisions likely originated in neither Minnesota nor Montana but in the insurers' offices in Connecticut. *See id.* As for any argument that litigating this action in Montana would be more convenient for the

5

parties because they have already been involved in litigating the Fox Lawsuit there, this argument no longer has force, because BNSF concedes that the Fox Lawsuit settled.  BNSF Br. at 4.  There are thus no efficiencies to even hypothetically be gained by having both this district-court action and the now-resolved, state-court Fox Lawsuit proceed in Montana.

BNSF also argues that the District of Montana would be more convenient because the BNSF Lawsuit is being litigated there.  While it might be more convenient for BNSF and TKDA to litigate this action in the same district as the BNSF Lawsuit, this is not an argument for litigating this action in the District of Montana specifically so much as for consolidating the two actions *somewhere*.  Plaintiffs, who would gain no efficiencies or convenience because they are not parties to the BNSF Lawsuit, assert that BNSF and TKDA could have achieved the efficiencies they seek by asserting their allegations as cross-complaints in this action instead of filing the separate District of Montana action.  Plaintiffs also protest that it would be unfair if BNSF's later-filed action pulled this action from Plaintiffs' chosen forum.  The Court does not reach the merits of the first assertion, but addresses the second point below, *supra* note 3.

A transfer to the District of Montana would thus be more convenient for only two of the four parties.  Moreover, the at-issue policies were formed in Minnesota.  The consideration of how the Fox Lawsuit and BNSF Lawsuit affect the convenience of the parties, balanced against the consideration of where key events occurred, weighs only marginally in favor of transfer.

    **B.**    **Convenience of the Witnesses**

Montana does not appear to be a more convenient location than Minnesota for most of the relevant witnesses.  Analyzing this factor calls for more than tallying up "sheer numbers of witnesses," *Terra*, 119 F.3d at 696 (citation omitted); it requires an assessment of the "materiality and importance" of the anticipated testimony, *BAE Sys. Land & Armaments L.P. v.*

*Ibis Tek, LLC*, 124 F. Supp. 3d 878, 885 (D. Minn. 2015) (citation omitted). The party seeking transfer "must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Id.* at 886 (citation omitted). Courts focus on the convenience and availability of non-party witnesses, whose appearances may have to be compelled, on the assumption that witnesses within party control, like employees, will appear voluntarily wherever the forum. *E.g.*, *id.* at 885-86; *Cosmetic Warriors*, 723 F. Supp. 2d at 1106. Courts may also consider, though, the costs of obtaining the attendance of willing witnesses like employees. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W.D. Tex.*, 134 S. Ct. 568, 581 n.6 (2013); *Apple*, 602 F.3d at 913-14.

BNSF identifies the following witnesses and anticipated areas of testimony, BNSF Br. 7-8, Dkt. No. 15:

1. Kelly Ortgies, a former TKDA employee who was a "primary contact" on the Whitefish catwalk project;

2. Terry Fox, the former BNSF employee who "[b]esides being the Plaintiff in the Fox suit, . . . also is a witness to TKDA's involvement with the replacement [catwalk] platform" that TKDA installed in 2003;

3. David Mengoulos, a BNSF employee who will testify "regarding his observations of the construction work and modification of the [catwalk] unloading platform;"

4. David Hotchkiss, a BNSF employee who "will testify how the [catwalk] gangway purchased by TKDA performed in his experience;"

5. Gerald Gray, a BNSF employee who "will testify about the design issues" with the catwalk that Fox claimed in his lawsuit against BNSF; and

7

  6. Jim Renchler and Dwayne Curbow, BNSF employees who "will testify regarding project documents relating to TKDA's work on the [Whitefish] facility."

Most of the witnesses that BNSF names live in states other than Montana or Minnesota. Ortgies lives in Nebraska, Gray lives in Washington, and Renchler and Curbow are in Kansas. BNSF Br. 7-8. A transfer to Montana would not be appreciably more convenient for these witnesses. Three witnesses—Fox, Mengoulos, and Hotchkiss—live in Montana, but two of them are current BNSF employees whom the Court assumes would be willing to appear, if necessary, to testify in Minnesota. Significantly, the three Montanans do not appear to be key witnesses for this action. As articulated by BNSF, the testimony from Fox and Mengoulos could have some relevance to the question of the scope and nature of TKDA's work on the catwalk and whether that work qualifies as "professional services" under the Charter Oak and Travelers policy exclusions. But the BNSF-identified witnesses who appear likely to provide the most relevant testimony are Nebraska-based Ortgies, whom BNSF identifies as TKDA's key representative on the Whitefish project, and Kansas-based Renchler and Curbow, whom BNSF offers as knowledgeable about project documents likely to shed light on the scope and nature of TKDA's work. For these seemingly key witnesses, neither Montana nor Minnesota would be particularly convenient, which does not help BNSF meet its burden on this motion. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964); *see also, e.g.*, *BAE Sys.*, 124 F. Supp. 3d at 884. As for the third Montanan witness, Hotchkiss, his testimony about the catwalk's performance, which might be relevant to a liability analysis in the Fox

Lawsuit, does not appear relevant to this narrow insurance-coverage dispute. In sum, BNSF's showing on the convenience-of-the-witnesses factor does not tip the scales in its favor.[2]

Plaintiffs assert that testimony is unlikely to be necessary, because in their view the Court will be able to decide a dispositive motion based solely on interpretations of the relevant documentary evidence. Plfs.' Br. 16. They also point out that they entered into the policies at issue with their Minnesota-based insured TKDA through a Minnesota insurance broker, and that they believe that TKDA negotiated its contracts with BNSF and did much of the work on the Whitefish project remotely from its Minnesota offices. *Id.* at 6. Although TKDA does not so concede, it is reasonable to believe that some of its Minnesota-based employees might offer relevant testimony about TKDA's work on the catwalk, and Minnesota would be a more convenient and less costly venue for them than Montana. It is also conceivable that the Minnesota insurance broker might offer some relevant insight into, for example, the question of whether BNSF was an "additional insured" under the policies. The Court does not find that these points, conceptual as they are, weigh against transfer, but they help demonstrate that BNSF has not met its heavy burden with regard to the convenience-of-the-witnesses factor.

### C.   Public-Interest Factors

Commonly considered factors pertaining to the public interest include "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating

---

[2] Another potentially relevant factor in the § 1404(a) analysis is the location of proof, including documentary evidence. *See, e.g.*, *Apple*, 602 F.3d at 914. The parties have not addressed this factor, but the Court notes that two employees whom BNSF identified as likely to be knowledgeable about project documents are located, presumably along with any such documents, in Kansas. More to the point, BNSF does not argue that any relevant documents would be found in Montana, so this factor does not help it meet its burden. Likewise, although BNSF repeatedly mentions that the catwalk is in Montana, it sensibly does not argue that it would be helpful for jurors to view the "premises" in this insurance dispute. *See Atl. Marine*, 134 S. Ct. at 581 n.6 (noting that one private-interest factor is the "possibility of view of premises, if view would be appropriate to the action") (citation omitted).

in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra*, 119 F.3d at 696; *see also Atl. Marine*, 134 S. Ct. at 581 n.6.  Quoting *Radisson Hotels Int'l, Inc. v. Westin Hotel Co.*, 931 F. Supp. 638, 641 (D. Minn. 1994), BNSF argues that the public-interest factors are the "most important" in the § 1404(a) analysis.  BNSF Br. 9. While it is true that in some cases, courts have accorded the public-interest factors greater significance, in other cases, courts have found the private-interest factors to be paramount.  *E.g.*, *BAE Sys.*, 124 F. Supp. 3d at 885 (citing the convenience of the witnesses as "generally the most important factor") (citation omitted); *Klatte v. Buckman, Buckman & Reid, Inc.*, 995 F. Supp. 2d 951, 955 (D. Minn. 2014) ("The convenience-of-witnesses factor generally is regarded as the most important in the inquiry."); *see also Atl. Marine*, 134 S. Ct. at 581 (noting that "public-interest factors will rarely defeat a transfer motion").  BNSF asserts that (1) judicial economy and (2) consideration of the plaintiff's choice of forum are the two public-interest factors most relevant to its § 1404(a) motion.  BNSF Br. 9.

Regarding judicial economy, BNSF argues that this action is related to the BNSF Lawsuit in Montana, and that "[l]itigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids duplic[ative] litigation and inconsistent results."  *Cosmetic Warriors*, 723 F. Supp. at 1110 (citation omitted).  There is no question that "[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).  By the same token, courts have granted transfers "to districts where related actions are already pending to permit cases to be consolidated

into one proceeding," as when, for example, the claims in the transferor action are "dependent on proving the same [facts] as those that have been alleged in the [transferee] action." *Gemini Inv'rs III, L.P. v. RSG, Inc.*, Civ. No. 08-5264 (ADM/JJG), 2009 WL 776740, at *5 (D. Minn. Mar. 20, 2009); *see also Cosmetic Warriors*, 723 F. Supp. 2d at 1109 (finding that it would conserve judicial resources to "have all of these related claims resolved in one forum" where both the action in the transferor district and an action in the transferee district involved alleged trademark infringement through the sales of the same product line).

      BNSF has not convinced the Court, however, that this action is so closely related to the BNSF Lawsuit, to which Plaintiffs are not parties, that transfer would serve the interests of judicial economy. Although BNSF construes this action as "deal[ing] with related sub-issues to" the BNSF Lawsuit and "ar[i]s[ing] from the same transaction and events which are the basis of the Montana action," it does not argue that the two actions would be consolidated if they were both in the District of Montana—in fact, BNSF does not even assert that it would seek to consolidate them. BNSF Br. 9-10. Moreover, BNSF concedes that the "parties to the two actions are not the same" and that Plaintiffs' "insurance coverage issues, while they relate to BNSF and TKDA's Agreement, *are separate from and will not dispose of the Montana case*." *Id.* at 10 n.2 (emphasis added). Unlike in *Gemini*, 2009 WL 776740, or *Cosmetic Warriors*, 723 F. Supp. 2d 1102, Plaintiffs' claims are not dependent on the same facts as or identical to BNSF's claims in the BNSF Lawsuit. Even if both actions involve the same general subject matter (obligations with regard to the Fox Lawsuit), this action requires the interpretation of two insurance policies as well as certain terms in the contracts between BNSF and TKDA, while BNSF characterizes the BNSF Lawsuit as "relating to TKDA's contractual obligation to indemnify and defend [BNSF] in connection with the Fox [Lawsuit]." BNSF Br. 10 n.2. Even if

this Court and the district court in Montana are both called upon to interpret the BNSF-TKDA contracts, it does not appear, and BNSF does not argue, that the same contractual provisions will be at issue in both cases, which could hypothetically lead to inconsistent results. In sum, BNSF has not shown that judicial economy is a factor that weighs in favor of transfer in this case.[3]

BNSF argues that unlike in the usual case, Plaintiffs' choice of forum should be given "significantly less deference" because Plaintiffs are not Minnesota residents and "the transaction or underlying facts did not occur in the chosen forum." *Nelson v. Soo Line R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999); *see* BNSF Br. 10. As another court in this District has observed, "'less' deference does not mean 'no' deference." *CBS Interactive Inc. v. NFL Players Ass'n, Inc.*, 259 F.R.D. 398, 408 (D. Minn. 2009) (citation omitted). Further, and to reiterate, even though Plaintiffs are not Minnesotan, this is not a case where "no relevant connection exists" between the action and the plaintiff's choice of forum. *Compare with Apple*, 602 F.3d at 913. It is inaccurate to argue that the transaction or underlying facts did not occur in Minnesota, because Plaintiffs entered into the insurance policies with their Minnesotan insured using a Minnesotan insurance broker. And it is those policies, not the events that occurred in Montana, that form the heart of this insurance dispute. Therefore, although the Court affords less deference to Plaintiffs' choice of this forum because they are not from here, the Court still holds BNSF to its heavy burden of showing that transfer is appropriate and finds that BNSF has not met it.

The analysis could conclude there, but the Court briefly notes an argument that did not impact the result. Plaintiffs assert that two other public-interest factors weigh against transfer:

---

[3] Furthermore, even if BNSF had made a more compelling showing that transfer of this action to Montana would serve judicial economy, the Court would have some reservations about allowing BNSF to use its later-filed action in Montana to wrest Plaintiffs' case from their chosen forum. Parties should not "take unfair advantage of the relaxed standards for transfer" under § 1404(a). *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981).

conflict of law issues and the advantages of having a local court determine questions of local law.  Plfs.' Br. 19, 21-25.  The parties disagree as to whether Minnesota, Montana, Connecticut, or Texas law would apply to this dispute, and they do not identify any actual conflict of law that would make a choice-of-law analysis meaningful.  *Id.* at 24; BNSF Reply 8-9, Dkt. No. 28.  The parties devoted only a relatively small proportion of their multi-faceted arguments to the choice-of-law questions.  The Court concludes that the limited briefing on this topic does not support a finding that these two public-interest factors weigh either for or against transfer.

The parties do not argue that any other public-interest factors are relevant.[4]

### III.     Conclusion

Having considered the relevant factors, the Court concludes that neither the convenience of the parties or witnesses nor the interest of justice weighs strongly in favor of transfer.  Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant BNSF Railway Company's Motion for Transfer Pursuant to 28 U.S.C. § 1404(a) [Dkt. No. 13] is DENIED.

Dated: May 24, 2016

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

[4] The parties devote several footnotes to discussion of the "first-filed rule," but neither party actually argues that the rule applies, so the Court will not address this question.